IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INSTALLATION SOFTWARE TECHNOLOGIES, INC., d/b/a INSTALLSHIELD SOFTWARE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> WISE SOLUTIONS, INC., <br><br> Defendant. | Civil Action No. 03 C 4502 <br> Honorable David H. Coar, Presiding Judge <br> Honorable Morton Denlow, Magistrate Judge |

## NOTICE OF FILING

TO:  Michael J. Abernathy
     Scott M. Mendel
     Lisa A. Carroll
     Christopher I. Cedillo
     Bell Boyd & Lloyd LLC
     Three First National Plaza, Ste. 3300
     Chicago, IL 60602

William Lynch Schaller
John M. Murphy
Baker & McKenzie
One Prudential Plaza
130 East Randolph Drive
Chicago, IL 60601

PLEASE TAKE NOTICE that on Monday, January 26, 2003, we filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, the attached **Plaintiff's Opposition To Baker & McKenzie's Motion To Withdraw**, a copy of which is hereby served upon you.

By: _____
Special Counsel for Plaintiff,
INSTALLATION SOFTWARE TECHNOLOGIES,
INC. d/b/a INSTALLSHIELD SOFTWARE
CORPORATION

Harvey M. Silets / ID # 2604728
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe Street, Suite 1600
Chicago, IL 60661-3693
(312) 902-5511

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INSTALLATION SOFTWARE TECHNOLOGIES, INC., d/b/a INSTALLSHIELD SOFTWARE CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>WISE SOLUTIONS, INC.,<br><br>    Defendant. | Civil Action No. 03 C 4502<br>Honorable David H. Coar, Presiding Judge<br>Honorable Morton Denlow, Magistrate Judge |

FILED JAN 26 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

JAN 27 2004

### PLAINTIFF'S OPPOSITION TO
### BAKER & McKENZIE'S MOTION TO WITHDRAW

Plaintiff, Installation Software Technologies, Inc., d/b/a InstallShield Software Corporation (hereinafter "InstallShield"), by and through its attorney, Harvey M. Silets, Katten Muchin Zavis Rosenman, appearing specially, opposes Baker & McKenzie's Motion to Withdraw and states as follows:

1. Baker & McKenzie (hereinafter "Baker") has provided legal services to InstallShield since 1997. In March of 2003, Baker became involved in the investigation and legal analysis that preceded its filing of the instant proceeding on behalf of InstallShield.

2. It is undisputed that when Baker undertook this representation of InstallShield and filed the complaint against Wise Solutions, Inc. ("Wise") on or about June 27, 2003, Baker had no relationship whatsoever with Wise.

3. Over five months after the suit was filed, on or about December 2, 2003, Altiris, Inc. (hereinafter "Altiris"), announced that it had acquired Wise. Upon information and belief, at the time of the acquisition, Altiris was aware of this litigation and knew Baker was representing



InstallShield. Baker had performed legal services for Altiris with respect to international, corporate, securities, tax and employment matters and acted as its primary counsel in Europe and Australia.[1] The subject matter of Baker's representation of Altiris is wholly unrelated to the litigation between InstallShield and Wise. Moreover, InstallShield was Baker's client before Altiris even existed and long before Altiris began its relationship with Baker.[2]

4. When Baker raised the alleged conflict of interest arising from Altiris's acquisition of Wise with InstallShield, InstallShield agreed to waive the conflict. This was only three days after Altiris acquired Wise. Altiris, to the contrary, refused to waive the conflict which it created and demanded that Baker withdraw from its representation of InstallShield.[3]

5. Baker petitions this Court that "because Baker & McKenzie is uncertain how to proceed, Baker & McKenzie requests that this Court direct Baker & McKenzie and the parties how to proceed." (Motion, ¶ 13.) As pointed out by this Court during the proceeding on January 15, 2004, this Court's role is only to decide whether to permit Baker to withdraw as counsel in this litigation and not to tell what choice Baker must make between its two clients. Baker, however, by its motion to withdraw from its representation of InstallShield, is essentially choosing one client over another: Altiris over InstallShield. This Motion to Withdraw, filed by Baker pursuant to the demand of Altiris, was not due to any wrongdoing on the part of InstallShield. It is analogous to a motion to disqualify. It is well-recognized that disqualification of counsel is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982).

---

[1] Letter from M. Abernathy to J. Murphy dated December 16, 2003, attached to Motion as Exhibit 1A.

[2] InstallShield received its first invoice from Baker in June 1997. Altiris, according to its website, was formed in 1998. The December 16, 2003 Letter attached to the Motion as Exhibit A1 references a relationship between Altiris and Baker that has lasted over two years.

[3] Letter from M. Abernathy to J. Murphy dated December 16, 2003, attached to Motion as Exhibit 1A.

2

Courts acknowledge that disqualification "foists substantial costs upon innocent third parties" who "suffer delay, inconvenience and expense and will be deprived [their] choice of counsel." *SWS Financial Fund A v. Salomon Brothers Inc.*, 790 F. Supp. 1392, 1400 (N.D. Ill. 1992). It is also "no secret that motions to disqualify are frequently brought as dilatory tactics." *Id.* at 1401.

6. Courts considering motions for disqualification (or their equivalent) must, therefore, balance the competing considerations of the party's prerogative to proceed with counsel of its choice and the privacy of the attorney-client relationship. *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983); *The Reuben H. Donnelley Corp. v. Sprint Publishing & Advertising, Inc.*, No. 95 C 5825, 1996 U.S. Dist. LEXIS 2363, *10 (N.D. Ill. 1996 ) (attached to Motion as Exhibit 2).

7. For the reasons described in more detail below, this Court should not allow Altiris' acquisition of Wise to trump InstallShield's prerogative to continue being represented by its counsel of choice in this litigation.

8. When a client brings a motion to disqualify based on a conflict created by that client's new affiliation with a party adverse to an existing client of the firm, the balance tips in favor of allowing the representation of the other client to continue. *See, e.g., University of Rochester v. G.D. Searle & Co., Inc.*, No. 00-CV-6161L(B), 2000 U.S. Dist. LEXIS 19030 (W.D N.Y. Dec. 11, 2000) (attached to Motion as Exhibit 6) (fact that conflict arose only by virtue of moving client's merger subsequent to firm's engagement by other client tipped the balance against disqualification); *Carlyle Towers Condominium Association, Inc. v. Crossland Savings, FSB*, 944 F. Supp. 341, 349 (D.N.J. 1996) (attached to Motion as Exhibit 7) (disqualification not required when conflict was created by moving client's acquisition of party adverse to other client); *Hawthorne Partners v. AT&T Technologies*, No. 91 C 7167, 1993 U.S. Dist. LEXIS

3

2575, *5-7 (N.D. Ill. March 1, 1993) (attached to Motion as Exhibit 9) (motion to disqualify denied when the moving party foisted the conflict upon the firm after the firm's representation of the other client had begun).

9. As in those cases, "the balancing of interests between [InstallShield's] desire to continue with its counsel of choice and [Altiris'] interest in the attorney-client relationship tilts in [InstallShield's] favor." *Donnelley*, 1996 U.S. Dist. LEXIS 2363 at *10 (N.D. Ill. 1996 ). In *Donnelly*, the court noted that there was "little probability of a transfer of confidential information" because the events which were the subject of the suit occurred before the corporate affiliates became closely intertwined. *Id.* at *11. As in this case, the events that are the subject of the suit occurred before the corporate affiliation between Altiris and Wise even existed and there is practically no possibility that Baker would be in possession of confidential information of Wise.

10. Moreover, the *Donnelly* court also found that Donnelly would "suffer greatly" if its lawyers were disqualified because the firm had represented Donnelly since the dispute's inception and Donnelly had invested substantial resources in the firm's efforts to develop the facts and legal theories Donnelly needed to enforce its rights. *Id.* at *12. The court explained that disqualification would harm Donnelly by requiring it to: (i) pay another firm to replicate the significant work already performed, and (ii) risk not having the new firm sufficiently prepared to represent it properly. *Id.*

11. InstallShield would likewise suffer greatly if Baker is allowed to withdraw. Baker has billed InstallShield over $292,000 in legal fees with respect to this litigation and has informed InstallShield that an additional $40,000 remains unbilled. InstallShield has also devoted a significant amount of its own resources communicating information about its business

and the underlying facts to Baker. If Baker is permitted to withdraw, InstallShield would have to repeat all of its efforts with new counsel and suffer the attendant delays involved in that process, as well as a resultant delay of the case before this Court.

12. On the other hand, Baker's continued representation of InstallShield creates no disadvantage to Altiris. Altiris could, if it wished to do so, continue to have Baker represent it in the discrete areas in which Baker has already been providing legal services, subject to appropriate "Chinese Wall" arrangements. Altiris/Wise has identified no confidential information that Altiris shared with Baker that is in any way material to the litigation between InstallShield and Wise.

13. Not a single case cited by Baker in its Motion disqualifies a firm from continuing its representation of a client in circumstances where another client created a conflict of interest. As noted by the court in *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 738 F.Supp. 1121, 1126 (N.D. Ohio 1990), the "explosion of merger activity" and "corresponding increase in the possibility that attorney conflicts of interest may arise unexpectedly" make "courts less likely to order disqualification and more likely to use other, more tailored measures to protect the interests of the public and the parties."

14. When representation of both clients is not feasible, some courts have allowed the firm to choose which client it will continue to represent. *Carlyle Towers*, 955 F.Supp. at 349 (allowing firm to terminate representation of client that created the conflict); *In re Wingspread Corp.*, 152 B.R. 861 (S.D. N.Y. Bank. 1993) (attached to Motion as Exhibit 8) (allowing firm to terminate representation of client that created conflict then refused to waive it); *Ex Parte AmSouth Bank v. Drummond*, 589 So.2d 715 (Ala. Sup. Ct. 1991) (attached to Motion as Exhibit 12) (allowing firm to choose to terminate representation of client that would be least prejudiced

5

by losing its services). Baker cites no cases, however, where a court approved a firm's choice to continue representing the client that created the conflict, much less when withdrawal would prejudice the other client in litigation.

15. On the contrary, the court in *Carlyle Towers* specifically approved one firm's choice to terminate its representation of the party that created the conflict, explaining that "it is proper for plaintiff's counsel to choose their client, in a situation where the defendants moving for disqualification created the conflict in the first place, [because] this result discourages the possibility discussed in *Gould* where one party in a case creates a conflict 'by buying up companies which opposing counsel represent[s]' to 'force the disqualification or withdrawal of opposing counsel.'" *Carlyle Towers*, 955 F. Supp. at 349, n.7., quoting *Gould*, 738 F. Supp. at 1127.

16. If Baker is allowed to withdraw, Altiris' acquisition of Wise and subsequent refusal to waive the conflict will disadvantage InstallShield in this litigation by causing delay, duplication of efforts, and excessive costs. If a litigant can effectively force counsel to withdraw from representing an adverse party by merging with one of the many other clients of that lawyer's firm, corporate mergers and acquisitions will become a new technique for gaining a tactical advantage in litigation. Granting the Motion to Withdraw would open the door to precisely that kind of unacceptable manipulation of the ethical rules.

17. Granting Baker's Motion to Withdraw would also undermine "[p]ublic confidence in lawyers and the legal system" by allowing a firm to "suddenly abandon one client in favor of another" without providing any justification for its behavior. *Harte Biltmore Ltd. v. First Pennsylvania Bank*, 655 F. Supp. 419, 422 (S.D. Fl. 1987). Unlike the firm in *AmSouth*, Baker does not claim that it has chosen to withdraw from representing the client that it believes

would be least prejudiced by losing its services. *AmSouth*, 589 So. 2d at 719. In *AmSouth*, one client was actively involved in litigation and the other had used the firm for certain transactions involving banking and corporate matters. *Id.* at 716-17. The firm chose to continue its representation of the client involved in litigation after determining that withdrawal would have a lesser impact on the other client. *Id.* at 719. Nothing in Baker's motion indicates that Altiris would suffer more prejudice if it lost Baker's services than InstallShield would suffer by losing the firm that has represented it since the inception of this litigation. Such an argument, moreover, would be difficult, if not impossible, to make.

18. Baker's failure to provide any justification for favoring Altiris over InstallShield may, therefore, implicate the well-established ethical rule that "an attorney may not drop one client like a 'hot potato' in order to avoid a conflict with another, more remunerative client." *Santacroce v. Neff*, 134 F. Supp.2d 366, 370 (D. N.J. 2001); *see also SWS Financial*, 790 F. Supp. at 1399 (termination of representation would be invalid if made for the purpose of dropping one client like a 'hot potato' in order to obtain more lucrative business).

19. Unless and until Baker carries the burden of demonstrating that: (i) it has a legitimate reason for choosing Altiris over InstallShield; (ii) Altiris' interest in its attorney-client relationship somehow outweighs InstallShield's prerogative to have its choice of counsel complete the case that it initiated on InstallShield's behalf; and, (iii) that the balance of interest of costs, delay, inconvenience and expense to InstallShield is outweighed by Altiris' desire to retain Baker as its counsel, this Court should not allow Baker to withdraw from its representation of InstallShield in this matter.

WHEREFORE, for the foregoing reasons, InstallShield respectfully requests that this Court deny Baker & McKenzie's Motion to Withdraw.

Dated: January 26, 2004        Respectfully submitted,

/s/ Harvey M. Silets
_____
Special Counsel for Plaintiff,
INSTALLATION SOFTWARE TECHNOLOGIES,
INC. d/b/a INSTALLSHIELD SOFTWARE
CORPORATION

Harvey M. Silets / ID# 2604728
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe Street, Suite 1600
Chicago, IL 60661-3693
(312) 902-5511

## CERTIFICATE OF SERVICE

I, Harvey M. Silets, an attorney, hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO BAKER & McKENZIE'S MOTION TO WITHDRAW** and **NOTICE OF FILING** were served upon:

| | |
|---|---|
| Michael J. Abernathy | William Lynch Schaller |
| Scott M. Mendel | John M. Murphy |
| Lisa A. Carroll | Baker & McKenzie |
| Christopher I. Cedillo | One Prudential Plaza |
| Bell Boyd & Lloyd LLC | 130 East Randolph Drive |
| Three First National Plaza, Ste. 3300 | Chicago, IL 60601 |
| Chicago, IL 60602 | |

via facsimile and U.S. Mail, postage prepaid, this 26th day of January, 2004.

_____
Harvey M. Silets