ute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 4502 | DATE | 3/2/2004 |
| CASE TITLE | Installation Technologies, Inc. d/b/a Installshield Software Corporation vs. Wise Solutions, Inc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Counsel's Motion to Withdraw, or For Other Appropriate Relief [Doc. No. 49]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached memorandum opinion and order, Counsel Baker & McKenzie's Motion to Withdraw [Doc. 49] is DENIED. Plaintiff's Motions for Leave to File First Amended Complaint [Doc. No. 44] and [Doc. 45] are GRANTED. New Rule 16(b) Scheduling Conference is set for Thursday, March 18, 2004, 9:30 a.m.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| No notices required, advised in open court. | | | Document Number |
| No notices required. | | number of notices | |
| Notices mailed by judge's staff. | | 3 - 5 04 | |
| Notified counsel by telephone. | | date docketed | |
| Docketing to mail notices. | | | 62 |
| Mail AO 450 form. | | docketing deputy initials | |
| Copy to judge/magistrate judge. | | | |
| | | date mailed notice | |
| slf (lc) | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INSTALLATION SOFTWARE TECHNOLOGIES, INC. d/b/a INSTALLSHIELD SOFTWARE CORPORATION,<br>    Plaintiff,<br><br>v.<br><br>WISE SOLUTIONS, INC.,<br>    Defendant. | No. 03 C 4502<br><br>HONORABLE DAVID H. COAR |



MAR - 5 2004

## MEMORANDUM OPINION AND ORDER

Before this Court is Baker & McKenzie's ("Baker") motion to withdraw, or for other appropriate relief, due to a concurrent representation conflict under American Bar Association Model Rule of Professional Conduct 1.7 (" Model Rule 1.7"). This conflict is based upon Baker's representation of Installation Technologies, Inc., d/b/a Installshield ("Installshield" or "Plaintiff") in litigation before this Court, and its continuing representation of Altiris, Inc. ("Altiris"), who is now the parent company of Wise Solutions, Inc. ("Wise" or "Defendant"). For the reasons set forth below, Baker's motion to withdraw from its representation of Installshield is DENIED.

# I. PROCEDURAL HISTORY

On June 27, 2003, Installshield filed suit against Wise, seeking equitable and legal relief. Plaintiff presents four counts in its Complaint. In Count I, Installshield alleges unfair competitive practices under the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 *et seq*. Plaintiff alleges that Wise circumvented Installshield's technological measures to control access to its protected works. (See Complaint, ¶ 64). Count II alleges a violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq*. Installshield alleges that Wise intentionally and systematically obtained access to Installshield's ftp server without authorization and downloaded files containing confidential and proprietary information. (See Complaint, ¶ 70). Count III alleges a violation of the Copyright Act of 1976, 17 U.S.C. §§ 301 *et seq*., due to Wise's alleged copyright infringement. (See Complaint, ¶ 76). Finally, Count IV of Installshield's Complaint alleges violations of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*. Installshield alleges that Wise willfully and maliciously misappropriated and attempted to misappropriate Installshield trade secrets. (See Complaint, ¶ 88). Baker represents Installshield in its suit against Wise, and has represented the Plaintiff in various matters since 1997.

Altiris is also a client of Baker. Altiris has been a client of Baker for the past two years, and is Altiris' primary counsel in Europe and Australia. Baker attorneys in Amsterdam, London, Brussels, Paris, Frankfurt, Stockholm, Sydney, Hong Kong, and Toronto advise Altiris on international corporate, securities, tax, and employment law matters. On December 2, 2003, Altiris acquired Wise as a wholly-owned subsidiary, and on that same day, notified Baker of its

acquisition.[1] Clearly, Altiris' acquisition of Wise created a conflict of interest for Baker due to the current litigation between Altiris and Wise.

Baker approached Installshield and Altiris to waive the concurrent conflict of interest. On December 5, 2003, Installshield waived the conflict. On December 16, 2003, Altiris determined that it would not waive the conflict, and has taken the position that Baker must withdraw from its representation of Installshield in the underlying cause of action. On January 9, 2004, Baker filed its motion to withdraw, or for other relief that this Court deems appropriate. On February 17, 2004, this Court held an evidentiary hearing in order clarify the extent of Baker's representation of Altiris.

## II. DISCUSSION

As stated, Baker filed a motion to withdraw, or for other appropriate relief, based upon the concurrent conflict of interest. In its motion to withdraw, Baker states that it does not wish to prejudice Altiris or Wise. Baker filed its motion because of the representation dispute between two of its clients that cannot be resolved by agreement, and is requesting relief that the Court deems appropriate due to the conflict. Each client filed a memorandum regarding the conflict of interest.

Installshield and Altiris/Wise take divergent positions on whether the Court should grant Baker's motion to withdraw. Altiris/Wise argues that Baker must withdraw from this cause of action. Altiris contends that because Wise's financial results, including any losses or expenses

---

[1] Baker's office in San Francisco had knowledge of merger discussions prior to this date.

associated with this litigation, will directly impact the financial results of Altiris, there is an inherent conflict of interest that cannot be cured by a waiver. Additionally, Altiris/Wise notes that the President of Wise is now Craig Christensen, Altiris' General Counsel and Baker's primary contact. Since December 2, 2003, Mr. Christensen has overseen every aspect of the litigation between Wise and Installshield. Further, Altiris contends that Baker has performed legal work related to Altiris' acquisition of Wise, and contends that this work is substantially related to the legal work performed for Installshield in its suit against Wise. Therefore, Altiris contends, even if Baker withdraws from its representation of Altiris, it cannot represent Installshield, due to Model Rule 1.9. (Rule 1.9 prevents a law firm from representing a current client's interests that are adverse to those of a former client in matters substantially related to the law firm's representation of the former client without informed consent). Therefore, Altiris argues, Baker cannot represent both Altiris and Installshield without breaching its duty of loyalty to each client, and must withdraw in order to preserve client confidences.

Installshield, through special counsel, vigorously opposes the motion to withdraw. Installshield argues that it would be prejudiced if Baker is permitted to withdraw, due to the significant time and legal fees already invested into this litigation. Installshield contends that if Baker is permitted to withdraw, it would have to repeat all of its litigation efforts with new counsel, which would unduly delay proceedings in this Court. Additionally, Plaintiff contends that the legal work performed by Baker on behalf Altiris is wholly unrelated to Installshield's suit

against Wise, thereby foreclosing Altiris' argument that this conflict is incurable without Altiris' informed consent.[2]

Based on the Parties' submission and the evidentiary hearing, the Court determines that there are three issues that must be addressed in order to determine the proper resolution of this conflict of interest: (1) Does the concurrent conflict of interest standard under Rule 1.7 automatically preclude Baker from representing Installshield in its litigation against Wise (this assumes that either Altiris consents to the concurrent representation, or Baker withdraws from its representation of Altiris); If the answer to (1) is no, (2) Does the former client conflict of interest standard under Rule 1.9 preclude Baker from representing Installshield in the present cause of action without Altiris' informed consent; and (3) In light of the conflict of interest rules, should Baker be permitted to withdraw from its representation of Installshield? Each of these issues will be addressed in turn.

*A. Does the Concurrent Conflict of Interest Standard Preclude Baker's Representation of Installshield in its Suit Against Wise?*

*1. Legal Standard for Concurrent Representation Conflicts of Interest*

Baker is involved in a concurrent representation conflict, which is governed by Model Rule 1.7, which states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or

---

[2] In post-evidentiary hearing submissions to the Court, Baker also contends that it has not worked on any matters for Altiris substantially related to the claims in Installshield's current litigation against Wise.

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Courts considering motions for disqualification must balance the competing considerations of a party's prerogative to proceed with counsel of its choice and the privacy of the attorney-client relationship. Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983). Generally, if an attorney or law firm is involved in a concurrent representation conflict and cannot obtain a waiver of the conflict by both clients, there is a stringent standard of review. The court must consider "the duty of undivided loyalty which an attorney owes to each of his clients." Whiting Corp v. White Machinery Corp., 567 F.2d 713, 716 (7th Cir. 1977) (quoting Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384, 1386 (2nd Cir. 1976)). "The attorney must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his [or her] representation." Cinema 5, 528 F.2d at 1387.

### 2. *The Merger Exception*

The conflict before the Court is novel in that it arose through the activity of one of Baker's clients–namely Altiris' acquisition of Wise–and not by any action of Baker. As mergers and acquisitions have created a unique genre of conflicts. As a result, courts have had to decide how to analyze these cases under the traditional conflict of interest rules.

In Gould, Inc. v. Mitsui Mining & Smelting Co., 738 F.Supp. 1121 (N.D. Ohio 1990), a conflict arose when the law firm Jones, Day, Reavis & Pogue ("Jones Day") represented the plaintiff Gould in an action against, among others, Pechiney and Trefimetaux. Id. at 1122. The defendants moved to disqualify Jones Day's representation of the plaintiff. The defendants argued that the representation involved a conflict of interest for two independent reasons. Id. at 1123. Jones Day represented Pechiney in patent matters, which meant Jones Day was suing a current client on behalf of another client. Secondly, Jones Day represented IGT, a subsidiary of Pechiney, in various matters. Id. at 1124. In addressing the second conflict situation, the court in Gould stated,

> The explosion of merger activity by corporations during the past fifteen years, and the corresponding increase in the possibility that attorney conflicts of interest may arise unexpectedly, make it appropriate for a court to adopt a perspective about the disqualification of counsel in ongoing litigation that conforms to the problem. This means taking a less mechanical approach to the problem, balancing the various interests. The result is that the courts are less likely to order disqualification and more likely to use other, more tailored measures to protect the interests of the public and the parties.

Id. at 1126. The Gould court balanced various factors, including: (1) the resulting prejudice, if any, to the party moving for disqualification because the concurrent representation (i.e., whether confidential information has been exchanged and whether that confidential information is related to the present case); (2) the costs of disqualification to the non-moving party (financial expenses and the costs of retaining new counsel); (3) the complexity of the case; and (4) the origin of the conflict (i.e., whether it arose through an affirmative act of the party opposing disqualification). Id. at 1126-27. This Court determines that the standards the Gould court used are appropriate for

-7-

the circumstances in this action.[3] Each of the Gould factors will be addressed in order to determine whether Baker must be disqualified from representing Installshield because of its concurrent representation of Altiris.

### a. Has Altiris/Wise Been Prejudiced by the Concurrent Representation

Altiris/Wise argues that confidential information related to the litigation between Installshield and Wise has been provided to Baker, thereby compromising its ability to represent the Plaintiff in the underlying action. The Court does not dispute that Baker received confidential information in the course of its representation of Altiris. However, based on the February 17, 2004 evidentiary hearing and the Parties' briefs, the Court concludes that none of this confidential information is related to Installshield's suit against Wise.

Altiris/Wise argues that Baker engaged in transactions for Altiris that are related to Baker's representation of Installshield in the underlying action.[4] One transaction involved work performed by Baker's Amsterdam office, involving Altiris' acquisition of Wise. Altiris argues that this legal work is related to the Installshield/Wise litigation. However, based on the evidentiary hearing and the Parties' submissions, the Court determines that those transactions are

---

[3] Other District Courts within the Seventh Circuit have used the Gould factors for cases involving similar circumstances. In Gen-Cor, LLC v. Buckeye Corrugated, Inc., 111 F. Supp.2d 1049 (S.D. Ind. 2000), the defendant sought to disqualify plaintiff's counsel, because plaintiff's counsel also represented a newly-acquired subsidiary of the defendants in various matters. Id. at 1050. The court focused on Gould's analysis of whether confidences had been revealed to the law firm due to the conflicting representations, and the costs of disqualification to the non-moving party. Gen-Cor, 111 F. Supp.2d at 1055,1057.

[4] Significant information regarding these transactions was submitted to the Court for *in camera* review, in order to respect the Parties' attorney-client privileges. In the interest of maintaining those attorney-client privileges, most of the facts and details of these transactions are omitted in this public document.

not related to the current pending litigation. The legal work performed by Baker involved due diligence of the law of another country, which is not remotely related to the Installshield/Wise litigation, because the current litigation involves domestic federal and state intellectual property law. There is no evidence whatsoever that Baker has received information related to Wise's litigation strategies or confidential business information because of the work performed in Amsterdam involving Wise's acquisition.

There are other transactions that Altiris/Wise submitted to the Court for *in camera* review during the evidentiary hearing on this matter that it contends are related to Installshield's current suit against Wise. However, after reviewing Altiris/Wise's *in camera submissions*, the Court determines that those transactions are not related to the current pending litigation. Although Baker has performed "intellectual property" work for Altiris, it is unrelated to the pending litigation. It defies both logic and the letter of the conflict of interest rules to assert that all intellectual property work performed for Altiris is "related" to Installshield's suit against Wise, although there is absolutely no overlap of facts, circumstances or legal issues.

Altiris' argument that these transactions provided Baker with information about Wise that relates to this litigation fails. Baker has not worked on any legal matter for Wise Solutions, nor has it worked on any matter for Altiris related to this litigation. Information that Baker possesses about Altiris' acquisition of Wise is publicly available through the Securities and Exchange Commission's ("SEC") online service, EDGAR. Further, "familiarity with a company's corporate structure and personality is not enough to warrant disqualification." International Paper Co. v. Lloyd Mfg. Co. Inc., 555 F.Supp. 125, 136 (N.D. Ill. 1982). There is no relation

between the legal work performed by Baker for Altiris and the work performed for Installshield. Therefore, Altiris is not prejudiced by the concurrent representation.

### b. Costs of Disqualification to Installshield

The second factor that the <u>Gould</u> court considered when ruling on a motion to disqualify is the costs of disqualification to the non-moving party, including the financial expenses and those costs related to obtaining new counsel due to the complexity of the case. <u>Gould</u>, 738 F. Supp. at 1126-27. Baker has billed Installshield over $292,000 in this litigation, with accrued charges of an additional $40,000. Although this case is still in its early stages, this is a significant expenditure. Additionally, if Baker is disqualified from representing Installshield, it will have to obtain new counsel. While this court does not doubt that equally competent counsel can be obtained, the hours, legal skills and strategies devoted to the early stages of this case leads the Court to the conclusion that the costs of obtaining and educating new counsel, both in terms of financial expenditures and time, would be high to Installshield.

### c. Complexity of the Litigation

Altiris argues that this is not extremely complex litigation, as all counts in Plaintiff's Complaint derive from the same common nucleus of fact. The Court hesitates to make a determination at this relatively early stage of the litigation concerning the complexity of this matter. However, the Court notes that the expenditures that Installshield has already made for this case lead to the reasonable conclusion that any newly acquired counsel will need to spend a significant amount of time and energy becoming familiar with and litigating this case.

### d. The Origin of the Conflict

The final Gould factor has the court identify the party who created the conflict. Gould, 738 F.Supp. at 1127. In explaining why this should be a factor, the court stated, "While not the situation in this case, it is clear that courts would not permit one party in a case to create a conflict which forces the disqualification or withdrawal of opposing counsel by buying up companies which opposing counsel represents." Id. The conflict of interest in this cause of action was initiated by Altiris' acquisition by Wise, not by any action of Installshield or Baker. As with Gould, there is no accusation or indication that Altiris created the conflict to impair Baker's ability to represent Installshield. Nonetheless, the Court must ensure that neither party receives an advantage because of this acquisition. In ensuring that no advantage is gained because of this conflict, the Court must make certain that no ethical rules are violated. However, the Court must also ensure that this "conflict by acquisition", particularly since it arose mid-litigation, does not become a means for Altiris to strategically disadvantage Installshield.

The Court determines that a balance of all of the Gould factors leads to the conclusion that Baker should not be disqualified from representing Installshield due to the concurrent conflict of interest. Altiris would not be prejudiced by Baker's continued representation of Installshield, as there is no evidence that work performed for Altiris is related to the current litigation between Installshield and Wise. Further, the costs of disqualification to Installshield would be high, due to the significant financial expenses, time and effort spent with counsel that would have to be repeated if Installshield had to obtain new counsel. Additionally, the time and financial expenditures already exhausted in this case's early stages leads to the reasonable conclusion that this litigation will require a substantial devotion of time from any newly acquired

-11-

counsel, which would significantly delay proceedings in the case. Finally, the conflict was initiated by Altiris, and was not the result of any action or inaction on the part of Installshield or Baker. Therefore, the concurrent conflict of interest standard under Model Rule 1.7 does not disqualify Baker from representing Installshield in its action against Wise.

### B. Is There A Former Client Conflict of Interest?

If Baker continues its representation of Installshield, and Altiris does not consent to the concurrent representation, Baker must withdraw from its representation of Altiris, due to the concurrent conflict of interest that cannot be waived, as both clients did not consent to that waiver. See Model Rule 1.7. This would cause Altiris to become a former client; therefore, the Court must analyze the conflict under the former client conflict of interest standard--Model Rule 1.9. See Carlyle Towers Condo. Ass'n v. Crossland Sav., FSB, 944 F.Supp. 341, 349 (D.N.J. 1996) ("Having thus determined that Rule 1.7 was not violated, the next question to address is whether [the law firm] must be disqualified from representing Plaintiffs because of a violation of RPC 1.9"). In relevant part, Model Rule 1.9 states:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Therefore, a lawyer may not represent an adversary of his former client in matters substantially related to that prior representation. This means, "if a lawyer could have obtained confidential information in the first representation that would have been relevant in the second." Analytica Incorporated v. NPD Research, Inc., 708 F.2d 1263, 1266 (7th Cir. 1983). The court does not inquire into whether the lawyer actually obtained that confidential information and used

-12-

it against a client, or "if the lawyer is a firm rather than an individual practitioner–different people in the firm scrupulously avoided discussing them." Id. "It is not appropriate for the court to inquire into whether actual confidences were disclosed", but rather, could they have been disclosed. Id. (citing Westinghouse Elec. Corp. v. Gulf Oil Corp., 588 F.2d 221, 224 (7th Cir. 1978)).

The Seventh Circuit employs a three-step test to determine whether two matters are substantially related under Rule 1.9:

> Initially, the trial judge must make a factual determination of the scope of the prior representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

Westinghouse Electric Corp., 588 F.2d at 225. The Court will address these factors in turn.

In analyzing the concurrent conflict of interest, the Court has already addressed the scope of the prior representation–Baker has been engaged by Altiris primarily to handle international corporate transactions, work principally performed by Baker's international lawyers, with some recent work performed by Baker attorneys in San Francisco. Because Baker and Altiris have had an ongoing attorney-client relationship for two years, it is reasonable to assume that confidential information has been exchanged between them. However, as discussed when analyzing the concurrent representation conflict in Section II.A.2 of this opinion, Baker's representation of Altiris is not substantially related to its representation of Installshield in this present cause of action. Baker's representation of Altiris largely involved international laws and research on abstract legal principles–nothing that would remotely affect the disposition of this case. This includes the work Baker performed related to Altiris' acquisition of Wise. Again, that legal work

involved research on international laws and abstract legal principles. Installshield's suit against Wise involves domestic federal and state intellectual property law, and there is no factual overlap. Therefore, the legal work performed for Altiris and Installshield is not substantially related.

Altiris contends that because Installshield is seeking injunctive relief which would affect Altiris' financial performance, sales prospects, and general market strengths, the work performed by Baker on behalf of Installshield and Altiris is "substantially related." This argument lacks merit. While Installshield's decision to seek injunctive relief may have factored into Altiris' decision to refuse to waive the conflict, it does not deem the legal work "substantially related." Altiris/Wise has failed to show how Baker's possession of this general knowledge about Altiris' business structure is in any way related to Installshield's suit against Wise. Further, this general business structure information is public knowledge, readily accessible through the SEC. Therefore, the Court finds that Baker's representation of Installshield in the current pending litigation is not substantially related to its representation of Wise. Even under a former client conflict of interest analysis, Baker would not need to obtain Altiris' consent in order to represent Installshield in the current pending litigation.[5]

---

[5] Altiris/Wise contends that Baker may not drop Altiris as a client to cure its present conflict (a court should "not allow a firm to drop a client 'like a hot potato' in order to shift resolution of the conflict question" from a concurrent representation conflict to a former client conflict). See Law. Man. Prof. Conduct § 51:201, 218; International Longshoreman's Ass'n, Local Union 1332 v. International Longshoreman's Ass'n, 909 F.Supp. 287, 293 (E.D. Pa. 1995) (applying 'hot potato' rule to reject counsel's offer to withdraw from plaintiff/client's related cases to represent the defendant/client in pending litigation because such behavior violates attorney's duty of loyalty). However, contrary to Altiris' assertion, courts do allow withdrawal in order to cure a concurrent conflict when that conflict is not caused by any action of the law firm, but by an action of one of its clients–in this instance, Altiris' acquisition of Wise. See Hawthorne Partners v. AT&T Technologies, 1993 U.S. Dist. LEXIS 2575, at *4-5

*C. Baker's Motion to Withdraw*

Because this Court has determined that Baker need not be disqualified from its representation of Installshield, the Court must now determine if Baker should be permitted to withdraw from its representation of Installshield in the present litigation.

The decision to grant or deny counsel's motion to withdraw is committed to the discretion of the trial court. Washington v. Sherwin Real Estate, Inc., 694 F.2d 1081, 1087 (7th Cir. 1982). When ruling on a motion to withdraw, a court may consider the disruptive impact that the withdrawal will have on the prosecution of the case. Whitting v. Lacara, 187 F.3d 317, 320 (2nd Cir. 1999).

Some courts have used various guidelines in determining whether to grant or deny a motion to withdraw, including: (1) the reasons why withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case. See Rusinow v. Kamara, 920 F.Supp. 69, 71 (D.N.J. 1996); Haines v. Liggett Group, Inc., 814 F.Supp. 414, 423 (D.N.J. 1993); Byrd v. District of Columbia, 271 F.Supp. 2d 174, 176 (D.D.C. 2003); Taylor v. Stewart, 20 F.Supp.2d 882, 883 (E.D.Pa. 1998). The reason why withdrawal is sought is clear–due to the concurrent conflict of interest representation. The Court will analyze each of the other factors in order to determine whether Baker should be permitted to withdraw.

Altiris has relied heavily upon Installshield for the past two years in its international litigation. Additionally, Baker has performed legal work for Installshield since 1997. Therefore,

---

(N.D. Ill. 1993) (citing Gould, 738 F.Supp. at 1127).

both parties will be prejudiced if Baker is required to withdraw from its representation. However, most significant to the present cause of action, Installshield has already committed over $330,000 in legal fees to this case, and because of this significant financial expenditure, would be significantly burdened if it must retain new counsel. Installshield would also have to inform new counsel of all prior proceedings in this case, as well as the procedures that led to Baker's litigation strategies. Although this litigation has not progressed very far, and even assuming that Altiris' position that this case is not very complex is correct, the fact that there has been significant time, energy and financial resources poured into this case, deems it necessary to determine that Installshield will be more prejudiced than Altiris if Baker is permitted to withdraw. Further, while the Court does not doubt that Installshield will be able to find equally competent counsel if Baker is permitted to withdraw, the fact that Installshield would have to engage new counsel undoubtedly means that this case would be unduly delayed. Therefore, balancing all of the equitable factors, the Court determines that Baker should not be permitted to withdraw from its representation of Installshield in its suit against Wise.

Based on the Court's ruling, if Altiris remains steadfast in its decision not consent to the concurrent conflict of interest by written waiver, Baker will need to take the appropriate measures to cure the conflict, which will mean withdrawal of its representation of Altiris. However, it is Baker's responsibility to take the appropriate measures with its clients to ensure that it is not in violation of any of the Rules of Professional Conduct.

## III. CONCLUSION

For the foregoing reasons, Baker & McKenzie's motion to withdraw from its representation of Installshield is DENIED.

Enter:

_____
David H. Coar
United States District Judge

Dated: **March 2, 2004**